IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:24-cr-027 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| SAM SANDO, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Sam Sando planned and executed an armed robbery to get a quarter pound of marijuana. He recruited a partner and lured the victims to an apartment complex, surrounding their car at gun point. Defendant and his partner each fired three rounds into the victims' car, striking and ultimately killing one victim. That tremendous act of violence came on the heels of another violent act that same day, when Defendant held a gun to the head of his child's mother and threatened her life. Defendant has caused irreparable harm to many; the Court should sentence him to life in prison.

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 2
SENTENCING GUIDELINES ......................................................................................... 3
FACTUAL OBJECTIONS ................................................................................................ 4
GUIDELINES DISPUTES ................................................................................................ 4
A. The cross-reference from §2B3.1 to §2A1.1 applies. .............................................. 4
B. Aggravating role under §3B1.1(c) applies. ............................................................. 5
C. Obstruction of justice under §3C1.1 applies. .......................................................... 7
SENTENCE ....................................................................................................................... 9
CONCLUSION ................................................................................................................ 13

## BACKGROUND

On March 20, 2024, an Indictment was filed charging Defendant Sam Sando with four counts:

- Count 1, Conspiracy to Interfere with Commerce Through Robbery, in violation of 18 U.S.C. § 1951(a);

- Count 2, Attempted Interference with Commerce Through Robbery, in violation of 18 U.S.C. § 1951(a);

- Count 3, Attempted Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846; and

- Count 4, Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

(Dkt. No. 2).

Defendant proceeded to trial on August 2, 2024. Over the course of the three-day trial, the government presented testimony from eleven witnesses and approximately 130 exhibits. (Dkt. No. 114, and attachments thereto). The government dismissed Count 1 prior to trial and the remaining counts (Counts 2 through 4) were renumbered 1 through 3 for trial purposes only. The jury returned guilty verdicts on Counts 2 through 4. (Dkt. No. 105).

A draft presentence investigation report (PSR) was filed on October 4, 2024. (Dkt. No. 120). The government objects to the absence of an aggravating role adjustment for Sando and is seeking a two-level aggravating role adjustment under USSG § 3B1.1(c). (Dkt. No. 123). Sando made several objections (Dkt. No. 126). A final PSR was filed on November 26, 2024 (Dkt. No. 127), with no substantive changes impacting the guidelines. Sentencing is set for Monday, January 13, 2025, at 9:15 a.m.

## SENTENCING GUIDELINES

The PSR calculates Sando's advisory guidelines range as follows:

| | |
|---|---|
| Base Offense Level (§§2A1.1(a), 2B3.1(c)(1)) | 43 |
| Obstruction of Justice (§3C1.1) | +2 |
| Adjusted Offense Level | 45 |
| Total Offense Level | 43 |
| Criminal History Category | IV |
| Advisory Guidelines Range | Life (300 + 120)[1] |

(PSR pp. 9, 19, ¶¶ 24-32, 96-99).

The Court must resolve a number of factual and legal objections at sentencing, including: (a) the factual accuracy of the offense conduct statement as a whole; (b) whether paragraph three accurately details Defendant's conduct at the Polk County Jail; (c) whether the cross reference from USSG §2B3.1 to USSG §2A1.1(a) applies; (d) whether a two-level aggravating role enhancement is warranted, pursuant to USSG §3B1.1(c); and (e) whether an enhancement for obstruction for justice is warranted, pursuant to USSG §3C1.1.

At the time of filing, the government has received no requests for restitution from any victims nor any written victim impact statements. The government

---

[1] A total offense level of 43 and criminal history category IV produces an advisory guidelines range of life in prison. However, because the statutory maximum sentence on Counts 2 and 4 are 240 months' and 60 months', respectively, the advisory guidelines range on those counts is capped at a total of 300 months in prison. The mandatory minimum 120-month sentence on Count 3 must be ordered consecutive to any other sentence, resulting in an advisory guidelines range of 420 total months in prison. As discussed below, that's not enough.

3

anticipates at least one victim impact statement to be made at the sentencing hearing.

## FACTUAL OBJECTIONS

Defendant objects broadly to the facts contained in the PSR. These facts were taken directly from the testimony and exhibits presented at trial and are proved by a preponderance of the evidence. Defendant maintains his factual innocence and does not dispute that these facts are consistent with evidence produced at trial.

Defendant also objects to the PSR's summary of his conduct while in custody at the Polk County Jail. Def. Obj. ¶ 2. Paragraph three not only accurately summarizes his disciplinary infractions, it far underreports them. *See* GSX 1.

## GUIDELINES DISPUTES

### A.     The cross-reference from §2B3.1 to §2A1.1 applies.

The PSR correctly applies the cross-reference from §2B3.1 (interference with commerce by robbery) to §2A1.1 (murder). Defendant objects to this cross-reference. Def. Obj. ¶ 6. Defendant does not dispute that §2B3.1(c)(1) correctly calls for this cross-reference; he asks the Court to disregard this cross-reference under an overly broad reading of USSG §1B1.3(c).

Under newly amended §1B1.3(c), "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." Defendant argues §1B1.3(c) should obviate the cross-reference to murder because he was acquitted of the murder charge in state court.

But this isn't state court. Section 1B1.3(c) specifically excludes from relevant conduct only conduct for which the defendant was "criminally charged and acquitted in *federal* court."[2] Defendant wasn't charged with murder in federal court, and he certainly wasn't acquitted of it. To the contrary—the facts at trial established that T.T. was killed during this robbery under circumstances that constitute murder. The cross-reference applies.

### B. Aggravating role under §3B1.1(c) applies.

The government objected to the PSR's failure to score a two-level upward adjustment under §3B1.1(c). This adjustment is applicable "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." USSG §3B1.1(c).

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG §3B1.1, comment. (n.4). The terms organizer, leader, manager, and supervisor are defined "quite liberally." *United States v. Anwar*, 880 F.3d 958, 972 (8th Cir. 2018). "The key factors in this analysis are control and organization." *United States v. Irlmeier*, 750 F.3d 759, 764.

---

[2] This makes sense, of course. The Court can easily imagine a scenario where a defendant was acquitted in state court only to be convicted of identical conduct in federal court (e.g., a felon in possession of a firearm). Exclusion of the conduct leading to the state court acquittal would necessarily exclude conduct leading to the federal conviction.

5

By its plain terms, Defendant was an organizer of this criminal activity. He conceived of, planned, and executed this robbery, having enlisted Salifou Sahr to help. Defendant—not Sahr—knew A.M. because they had gone to school together and were friends on Facebook. Defendant—not Sahr—knew that A.M. sold drugs because they had talked about buying and selling drugs together before over Facebook. *See* GTX 402 pp. 1-3. Defendant—not Sahr—started messaging with A.M. on Facebook, setting up the marijuana deal that he always intended to be a robbery (before Sahr was even in town). *See* GTX 403A pp. 1-2. Defendant—not Sahr—continued messaging A.M., lying and luring him to the robbery location. *Id.* at 5-10. Defendant—not Sahr—was from Des Moines, knew the area, and selected the robbery location. *United States v. McDonald*, 521 F.3d 975, 978-79 (8th Cir. 2008) (affirming the application of a two-level role adjustment where, among other things, the defendant made the decision to do the robbery and identified the target). The fact that Sahr was undoubtedly a willing participant in the robbery does not negate Defendant's role. *See United States v. White*, 827 Fed. Appx. 607, 608-09 (8th Cir. 2020) (rejecting the defendant's argument that a co-conspirator knew about the plan and participated in it).

Because Defendant is already a total offense level 43, a role adjustment has no further impact on the guidelines range. As such, the Court should consider Defendant's role and relative culpability in imposing sentence, regardless of whether it applies the aggravating role adjustment.

### C.    Obstruction of justice under §3C1.1 applies.

Defendant objects to an upward adjustment for obstruction of justice under §3C1.1. Def's Obj. ¶ 5.  It applies.

Under §3C1.1, a two-level adjustment applies where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  Conduct that warrants this adjustment includes influencing or attempting to influence a witness.  USSG §3C1.1., comment. (n.4(A)).

Given the extensive pretrial litigation on this issue, the Court is well-versed in Defendant's attempts to influence A.A., the mother of his child and a witness to conduct relevant to the offenses of conviction.  Nonetheless, the government provides some brief factual context.

In the early morning hours of January 9, 2022 (the same day as the robbery), Defendant held a gun to the head of A.A and threatened her life.  A.A. called the police, who arrived just as Defendant was leaving the apartment building (though unknown to police at the time).  In video-recorded statements to police within minutes of the assault, A.A. recounted the assault and said Defendant possessed a black gun with an Ethika sticker on it.  She also showed the responding officer a photo of Defendant with that gun.  On January 19, Defendant was arrested and charged with domestic abuse assault involving the use or display of a weapon.  PSR ¶ 38.  On April 20, 2022, Defendant pled guilty to criminal mischief from this incident and a no-contact order issued for Defendant and A.A.  *Id.*; Dkt. 84-8, p. 2.

7

Immediately following Defendant's guilty plea for that assault, he was interviewed and ultimately arrested for first degree murder. Following that interview, Defendant made a call to A.A., his first of many violations of the no-contact order. *See* GSX 3.[3] During that phone call, Defendant told A.A. to get ahold of Brianna Hoffman—Sahr's girlfriend and the owner of the house where Defendant and Sahr fled in Waterloo—and they discuss getting their stories straight with Sahr and Hoffman. GSX 3; Dkt. 84-8, p. 3.

Defendant told A.A. that "the most evidence [the police] have on him is that [they] found out where he was at [on January 9 at the time of the robbery and shooting]." GSX 3; Dkt. 84-8, p. 4. A.A. said she told the police that Defendant was at her apartment with their son. GSX 3; Dkt. 84-8, p. 4. *See United States v. Jones*, 612 F.3d 1040, 1046 (8th Cir. 2010) (adjustment warranted where the defendant used another person to create a false alibi).

Over the course of the 40-minute call, Defendant told A.A. not to talk to police, not to answer when people call her, and to say she knows nothing. GSX 3; Dkt. 84-8, p. 3-4. That's obstruction. *See United States v. Shaw*, 965 F.3d 921, 928 (8th Cir. 2020) ("attempts to prevent others from communicating evidence of wrongdoing to law enforcement officers can constitute obstruction of justice"); *United States v. Jensen*, 834 F.3d 895, 899-900 (8th Cir. 2016) (coaching a witness on what to say to the police is an attempt to influence). Defendant also repeatedly told her how much

---

[3] Defendant placed a FaceTime call to A.A. from a police interview room. This call was approximately 41 minutes long. Detective Carter's summary of this call can be found at Dkt. 84-8, pp. 3-5.

he loved her and talked about her being loyal to him. GSX 3; Dkt. 84-8, p. 3-4.

Between April 20, 2022, and March 22, 2023, Defendant contacted A.A. over 300 times from jail. PSR ¶ 38; Dkt. 84-8, p. 5. Each was a violation of the no-contact order. *See United States v. Burgess*, 22 F.4th 680, 687 (7th Cir. 2022) (affirming application of an obstruction of justice adjustment where the defendant repeatedly violated a no-contact order with a girlfriend leading up to pertinent proceeding dates). During one call on May 15, 2022, Defendant asked A.A. if she was going to stay loyal to him and told her to "hold him down" until the case was over. *Id.* On March 21, 2023, A.A. was deposed as part of Defendant's state murder prosecution. She, effectively, recanted her prior statements that Defendant assaulted her on January 9 or possessed a gun. Dkt. 40-1, pp. 9-10. Although not required for the adjustment to apply, Defendant's attempts to influence A.A. undoubtedly succeeded.

Again, because Defendant is already a total offense level 43, the obstruction adjustment has no further impact on the guidelines range. As such, the Court should consider Defendant's obstructive conduct in imposing sentence, regardless of whether it imposes the obstruction of justice adjustment.

## SENTENCE

The Court should sentence Defendant to life in prison. Defendant—and Defendant alone—planned an armed robbery of a marijuana dealer that left T.T. dead and two other victims traumatized.

### A. Defendant's actions.

On January 7, 2022, Defendant put his plan into motion. He got ahold of A.M. on Facebook to start laying the groundwork. He arranged to "buy" $600 of marijuana from A.M. But Defendant didn't have any money. He always intended to rob A.M.

Defendant became desperate the morning of January 9. Early that morning, he got into a fight with A.A., the mother of his child. He held a gun—a black, 9mm—to her head and threatened her. He hit her. He put holes in the wall. All while their two-year-old son toddled around the room. When she called the police, he left. He had no money and nowhere to go. All he had was his phone, a Facebook account, and that gun.

He also had a target: A.M. The answer to Defendant's money problems. The one he had on the hook for days. He executed his plan to rob A.M. But Defendant knew he needed help, so he recruited Salifou Sahr—safety in numbers. Defendant stalled and bought time until they were ready. He delayed A.M., ignored him, lied to him about putting his son down for a nap. Of course, there was no son with him, there was no nap; there was only a plan to rob A.M.

On January 9, when Defendant and Sahr were ready, they summoned A.M. to an apartment complex in Des Moines. A.M. didn't come alone; he brought T.T. and A.W. with him. Defendant continued to lure and lull A.M., lying to him that Defendant was inside, rocking his son to sleep. When A.M. refused to go inside the apartment building, Defendant and Sahr came outside. They surrounded the car—with T.T. in the driver's seat, A.M. in the passenger seat, A.W. in the backseat.

And when T.T. started to pull away, Defendant and Sahr each opened fire, shooting three rounds apiece at the car. One of those bullets hit T.T., eventually taking his life. Another went over the head of a ducking A.M., skidding across the dashboard above his head. Others went into the car and, somehow, hit no one.

Defendant and Sahr fled. Defendant ditched his phone, his Facebook account, his gun. They ran to Waterloo, where they hid out with Sahr's girlfriend. There, Defendant made a new plan: an escape plan. He'd get a bus ticket to Rochester, start a new life, and make as much money as possible by doing robberies and dealing drugs. He just planned to do it all again.

### B.    Defendant's history and characteristics.

Defendant is 27 years old; he was 24 when he committed this crime. He reported a "good" childhood, void of abuse or neglect, and came from a loving and supportive household. But this robbery and shooting wasn't his first brush with the law, drugs, or violence.

In 2017, he was convicted of carrying a concealed weapon. PSR ¶ 35. In 2019, he was convicted of possessing marijuana. *Id.* ¶ 36. Five days after that conviction, he was arrested for distributing marijuana. *Id.* ¶ 37. He received a deferred judgment and probation, which he repeatedly violated by failing to complete substance abuse treatment, using alcohol and marijuana, associating with people engaged in criminal activity, and committing new crimes—like this one. *Id.* Despite that history, Defendant "reported he smoked marijuana less than once per month"

(*id.* ¶ 76), "did not report a history of consuming alcohol" (*id.* ¶ 77) and "does not believe [substance abuse treatment] would be beneficial to him" (*id.* ¶ 78).

As discussed above, on the morning of January 9, 2022, Defendant brutally assaulted the mother of his child, holding a gun to her head and threatening to kill her. PSR ¶ 38. After he was arrested on those charges, a no-contact order was put in place. *Id.* He violated the no-contact order over 300 times in just a few months. Unsurprisingly, A.A.'s later recantation of the assault—despite extensive evidence that it happened—led to the dismissal of domestic abuse charges. *Id.* Defendant pled guilty to criminal mischief (for the holes he put in A.A.'s wall) and six counts of violation of the no-contact order. *Id.*

In the relatively short time Defendant has been in custody on these charges, he has had significant disciplinary problems at the Polk County Jail. Those violations include multiple instances where he has been disruptive, made threats toward others, fought with another inmate, and been suspected of using K2. PSR ¶ 3; GSX 1.

### C.    The sentence.

Defendant's actions directly led to the death of T.T. He forever changed the lives of T.T's mother and family. He forever changed the lives of A.M. and A.W., who were also victims of his shooting and his calculated robbery. There is no more serious offense. He has never accepted responsibility for any of his actions. He has shown no remorse. He has continued, even in the wake of this incredibly serious conduct, to fight and threaten others. His co-conspirator, Salifou Sahr, received a life sentence. GSX 2. So should Defendant.

## CONCLUSION

The Court should impose a sentence of life in prison.

                                Respectfully submitted,

                                Richard D. Westphal
                                United States Attorney

By:   */s/ Mikaela J. Shotwell*
         Mikaela J. Shotwell
         Kyle J. Essley
         Assistant United States Attorneys
         Neal Smith Federal Building
         210 Walnut Street, Suite 455
         Des Moines, Iowa 50309
         Tel: (515) 473-9300
         Fax: (515) 473-9292
         Email: Mikaela.Shotwell@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2025, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail  ____ Fax  ____ Hand Delivery

_X_ ECF/Electronic filing  ___ Other means (email)

UNITED STATES ATTORNEY

By:   */s/ Mikaela J. Shotwell*

13